| | |
|---|---|
| MARY "BELLE" STOBERL, f/k/a/ BELLE ALGER, <br><br> Plaintiff, <br><br> vs. <br><br> CYBRCOLLECT, INC., <br><br> Defendant. | **No. 4:08-cv-00360 – JEG-CFB** <br><br> **O R D E R** |

This matter comes before the Court on Motion for Summary Judgment filed by Defendant CybrCollect, Inc. (CybrCollect), which Plaintiff Mary "Belle" Stoberl (Stoberl) resists. The Court held a hearing on the motion on October 7, 2011. Attorney David Hirsch represented Stoberl, and attorney Mollie Pawlosky represented CybrCollect. The matter is fully submitted and ready for disposition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

CybrCollect is a Wisconsin corporation that nationally provides its check recovery service. Stoberl is a resident of Des Moines, Iowa. On January 29, 2002, Stoberl[2] signed an agreement dated December 21, 2001 (2001 Agreement), with Gary M. Doherty (Doherty), the president of CybrCollect, agreeing to procure clients for CybrCollect's check recovery service on a commission basis. The arrangement was continued in a second agreement signed by the parties on

---

[1] The Court views the evidence either as undisputed facts, or in the light most favorable to the non-moving party, O'Neil v. City of Iowa City, Iowa, 496 F.3d 915, 916 n.1 (8th Cir. 2007), and affords the non-movant all reasonable inferences, see, e.g., Lexicon, Inc. v. ACE Am. Ins. Co., 634 F.3d 423, 425 (8th Cir. 2011) (citing Contemporary Indus. Corp. v. Frost, 564 F.3d 981, 984 (8th Cir. 2009); Fed. R. Civ. P. 56(a)), unless asserted facts are "blatantly contradicted by the record, so that no reasonable jury could believe [them]," Scott v. Harris, 550 U.S. 372, 380 (2007).

[2] At the time that Stoberl entered into these agreements, she was known as Belle Agler. This is the name by which she signed all contracts at issue.

March 7, 2002 (2002 Agreement). Under these agreements, Stoberl worked for CybrCollect for more than six years. During those years, Stoberl was consistently among CybrCollect's top sales people nationally.[3]

The 2002 Agreement provides that Stoberl, referred to as "Agency," has "non-exclusive territory as described in Schedule A." Def.'s App. 1, ECF No. 33-4. Schedule A states that Stoberl is granted the entire territory of the United States except for six areas.[4] In this territory, Stoberl is to solicit new clients for CybrCollect, referred to as "Company." The 2002 Agreement stipulates that Stoberl will be paid in accordance with Schedule C "for all clients obtained by [Stoberl] for as long as client remains a customer of [CybrCollect]." Id.

Schedule C lists the commissions to which Stoberl is entitled for each non-sufficient funds (NSF) check and provides that CybrCollect "agrees to pay [Stoberl] actual commission or a draw of $2500, whichever is greater, in each month that performance criteria in Schedule B are met. Company will not charge back or deduct any shortfall either during or after this agreement is terminated." Id. at 3. The 2002 Agreement further stipulates that compensation will cease immediately if Stoberl violates Item #10 of their arrangement. Item #10 provides, in part, that Stoberl "agrees not to compete with [CybrCollect] for a period of one year after termination of the agreement" with the slight caveat that "[i]f [Stoberl] is terminated by [CybrCollect] then this item does not apply." Id. at 1.

---

[3] Stoberl testified that in 2003 and 2004 she was recognized by CybrCollect for being top in sales nationally. She further testified that in 2006 she "was between second and fourth for being [sic.] in most profit for the company out of 1,200 agents." Stoberl Aff. 1, Pl.'s App. 107, ECF No. 54-3.

[4] The Schedule A and Schedule B provided to the Court by both parties with the 2002 Agreement were dated March 6, 2007. Neither party explains this anomaly. The 2002 Schedule A and Schedule B were not provided to the Court. While the record is inconsistent regarding how many limitations were placed on Stoberl and omits references specifying where, no dispute arises from these discrepancies. Accordingly, the Court simply notes that geographical limitations were placed on Stoberl under these agreements.

In addition to the 2002 Agreement, the parties signed an Addendum, which, for the purposes of summary judgment, both parties agree is part of the 2002 Agreement. The Addendum, amongst other alterations, removed from Item #10 and added to Item #9 the language that exempts Stoberl from the one year non-competition restriction if her employment were to be terminated by CybrCollect.[5] It also reiterated Stoberl's guaranteed draw of $2500 per month.[6]

The 2002 Agreement does not explicitly state that the arrangement can be terminated only for cause. It does, however, stipulate that "[t]his agreement may be terminated by [CybrCollect] for [Stoberl's] failure to meet performance standards set forth in Schedule B." Id. at 1. While Schedule B was not provided to the Court as part of the record for summary judgment, the attached Addendum amends the performance standards required in Schedule B by stipulating that Stoberl must "obtain 15 new clients every 30 days" and counts the new clients cumulatively. Id. at 5. The 2002 Agreement also provides that CybrCollect "will provide [Stoberl] with written warning of possible termination and allow [Stoberl] the period of time set forth in Schedule B to correct performance deficiencies." Id. at 1.

CybrCollect presented two more agreements to Stoberl, one on June 13, 2005, and the other on June 30, 2008 (2008 Agreement), both of which she refused to sign. The 2008

---

[5] The language to be removed from Item #10 stated, "[i]f Agency is terminated by company then this item does not apply," referring to the non-compete agreement contained in the remainder of Item #10. Def.'s App. 1, ECF No. 33-4. The language to be added stated, "[i]f for any reason agent is terminated by company, the one year non-complete agreement will no longer apply to agent." Id. at 4. At the hearing, the parties conceded that the added language was meant to modify Item #10, not Item #9.

[6] Specifically it states:

CybrCollect agrees to pay Agent a guaranteed draw of **$2,500** per month, until Agents [sic] actual commissions go above the said amount of $2,500, at which time Agent will be on her own. If or when Agents [sic] commission should fall below $2,500, then company shall reiterate the guarantee [sic] draw of $2,500 at those times.

Def.'s App. 5, ECF No. 33-4.

Agreement was accompanied by a letter that informed Stoberl that refusal to sign it would result in the termination of commission payments. At the hearing, the parties agreed that, because Stoberl refused to sign subsequent agreements, their arrangement continued under the 2002 Agreement and its Addendum.

In 2004, CybrCollect stopped paying Stoberl her full commission. Subsequently, Stoberl's commissions dropped by 25% in 2005. At the hearing, CybrCollect agreed, for purposes of summary judgment, that the drop in Stoberl's commissions reflected CybrCollect's withholdings of non-electronically collected fees. CybrCollect qualifies this admission by contending that Stoberl was at no time entitled to these fees. In mid-July 2008, CybrCollect ceased paying Stoberl altogether.

Pursuant to an inquiry received from Stoberl, Kathy Monroe (Monroe), the present CEO of CybrCollect, informed Stoberl by e-mail that she was not entitled to commission on checks not electronically collected.[7] Stoberl disputes this interpretation of the 2002 Agreement and asserts that she is entitled to commissions for all NSF checks, regardless of the collection method. And, while CybrCollect contends that Stoberl has been paid all commissions owed, Stoberl alleges that CybrCollect failed to pay past earned commissions and refuses to pay present and future residuals.

Stoberl asserts that in January 2007, Doherty solicited her to pose nude for him to photograph. She maintains that when she did not comply with this request, CybrCollect became hostile toward her. CybrCollect blocked Stoberl's agent access to CybrCollect's website by July 26, 2008. Prior to that time, CybrCollect began limiting the products Stoberl was entitled to sell, specifically by refusing to allow her to sell the product "Transfusion."

---

[7] The record reflects that the other primary means of collecting NSF checks are by mail or over the phone.

In the fall of 2008, Stoberl began selling MTSI's[8] check recovery services. While Stoberl initiated business with this company prior to that time, she alleges that she abided by the non-compete while working with CybrCollect. She further states that she does not recall selling MTSI's services to any CybrCollect customer.

Stoberl filed her initial petition in the Iowa District Court for Polk County on August 15, 2008. The case was removed to this court by co-defendant Purepay Electronic Collections, LLC (Purepay), on September 8, 2008. Purepay then filed and was granted a motion to dismiss all claims brought against it, leaving CybrCollect as the only remaining defendant. CybrCollect denied the allegations and filed three counterclaims against Stoberl. On August 19, 2009, CybrCollect filed its motion for summary judgment. Following seven extensions and continuances,[9] Stoberl filed a resistance to Defendant's motion on September 1, 2011, completing the record now before the Court.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must support its contention by pointing to "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" to demonstrate that no genuine issue of material fact exists. Rule 56(c)(1)(A). The evidence must be "viewed in the light most favorable to the nonmoving party only if there is

---

[8] This company is referred to only as "MTSI" in the record before the Court.

[9] Delays in the case resulted from an unusual number of medical and personal issues for parties and counsel on both sides, as well as other matters related to the litigation.

a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)).

The initial burden falls on the movant to "inform[] the district court of the basis for its motion and identify[] those portions of the record which show a lack of a genuine issue." <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395 (8th Cir. 1992). However, it is the non-movant's burden to "produce sufficient evidence to support a verdict in h[er] favor based on more than speculation, conjecture, or fantasy." <u>Doe v. Dep't of Veterans Affairs of the U.S.</u>, 519 F.3d 456, 460 (8th Cir. 2008) (internal quotation marks and citation omitted). "A party cannot defeat a summary judgment motion by asserting 'the mere existence of *some* alleged factual dispute between the parties'; the party must assert that there is a '*genuine* issue of *material* fact.'" <u>Quinn v. St. Louis Cnty.</u>, 653 F.3d 745, 751 (8th Cir. 2011) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." <u>Anderson</u>, 477 U.S. at 248. The grant of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>In re Baycol Prods. Litig.</u>, 596 F.3d 884, 888-89 (8th Cir. 2010) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). "In sum, the evidence must be 'such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Reed v. City of St. Charles, Mo.</u>, 561 F.3d 788, 791 (8th Cir. 2009) (quoting <u>Anderson</u>, 477 U.S. at 248).

Stoberl alleges eight causes of action against CybrCollect: (1) breach of contract, (2) failure to pay earned wages, (3) estoppel, (4) breach of fiduciary duty, (5) breach of implied covenant of good faith and fair dealing, (6) fraud, (7) unjust enrichment and/or quantum meruit, and (8) a request for declaratory judgment. CybrCollect counters that there is no genuine issue of material

fact regarding any of the above claims, and it is entitled to judgment as a matter of law. The parties do not contest that Iowa law governs their dispute.[10]

### B. Breach of Contract

Under Iowa law, to prevail in a claim of breach of contract a plaintiff must prove

(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [plaintiff] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

Kern v. Palmer Coll. of Chiropractic, 757 N.W.2d 651, 657-58 (Iowa 2008).

Stoberl alleges that CybrCollect violated the 2002 Agreement by wrongfully withholding her earned income. In support of her assertion, Stoberl references an e-mail received from Monroe in June of 2005, which states that CybrCollect would only pay Stoberl commissions on fees collected electronically. Stoberl argues that, contrary to Monroe's interpretation, the 2002 Agreement guaranteed her commission on all checks from which fees were recovered regardless of the collection method employed.

CybrCollect, supported by an affidavit from its vice president Jane Keller (Keller), counters that all payments due to Stoberl have been made. Pointing to Monroe's communications with Stoberl, CybrCollect asserts that Stoberl was only owed and has been paid for all electronic collections. Specifically, Monroe alleges that collection letters were not used when the original agreements were signed and contends that the present use of collection letters is considered an outside collection activity, which eliminates any obligation to pay commissions. Stoberl argued

_____

[10] The 2002 Agreement contains no choice of law provision but does contain a forum provision for the State of Wisconsin, which apparently no one seeks to enforce. Later but unexecuted documents contain a choice of Wisconsin law. CybrCollect relies on Iowa law, and Stoberl cites no law at all beyond Federal Rule of Civil Procedure 56. Stoberl makes no objection to the application of Iowa law. In the absence of some dispute on this issue, the Court proceeds to apply the law of the jurisdiction in which it sits.

at the hearing that a collection letter is essentially a "final notice" sent from inside the company to debtors.

At the hearing, CybrCollect stipulated for purposes of summary judgment that Stoberl's drop in commissions represented a loss of payment on funds collected non-electronically. However, CybrCollect contends that any such payment is irrelevant, because Stoberl is not now, nor was she ever, entitled to those payments under the 2002 Agreement. CybrCollect submits a 126-page spreadsheet with its motion, purportedly documenting the payment of all commissions owed to Stoberl during her last seven months as an agent for CybrCollect. CybrCollect concludes that the proffered documentation demonstrates that Stoberl has been paid; therefore, no breach of contract has occurred.

Both parties conceded at the hearing that the present dispute requires the Court to interpret the 2002 Agreement. Under Iowa law, contract "[i]nterpretation involves ascertaining the meaning of contractual words." Peak v. Adams, 799 N.W.2d 535, 543 (Iowa 2011) (quoting Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp., 266 N.W.2d 22, 25 (Iowa 1978)). "Interpretation of a contract is a legal issue unless the interpretation of the contract depends on extrinsic evidence." Pillsbury Co. v. Wells Dairy, Inc., 752 N.W.2d 430, 435 (Iowa 2008). "When the interpretation of a contract depends on the credibility of extrinsic evidence or on a choice among reasonable inferences that can be drawn from the extrinsic evidence, the question of interpretation is determined by the finder of fact." Id. at 436.

Under Iowa law, "[t]he cardinal rule of contract interpretation is the determination of the intent of the parties at the time they entered into the contract." C & J Vantage Leasing Co. v. Wolfe, 795 N.W.2d 65, 77 (Iowa 2011) (citing NevadaCare, Inc. v. Dep't of Human Servs., 783 N.W.2d 459, 466 (Iowa 2010). "[T]he language of a contract [] is the most important evidence of the contracting parties' intentions." Id. However, the Court "allow[s] extrinsic evidence to aid in the process of interpretation." Pillsbury, 752 N.W.2d at 436 ("[The Iowa Supreme Court]

now recognize[s] the rule in Restatement (Second) of Contracts that states the meaning of a contract 'can almost never be plain except in a context.'" (quoting Restatement (Second) of Contracts § 212 cmt. b (1979))).

"A contract is to be interpreted as a whole, and it is assumed in the first instance that no part of it is superfluous." Smith Barney, Inc. v. Keeney, 570 N.W.2d 75, 78 (Iowa 1997). "Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." Fausel v. JRJ Enters. Inc., 603 N.W.2d 612, 618 (Iowa 1999) (quoting Restatement (Second) of Contracts § 202(1) (1979)). Therefore, in determining meaning, the Court must consider the

> relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties. *But after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention.*

Id. (quoting Restatement (Second) of Contracts § 212 cmt. B (1979)).

To interpret the 2002 Agreement, the Court undertakes a two-step analysis. Walsh v. Nelson, 622 N.W.2d 499, 503 (Iowa 2001). "First, from the words chosen, a court must determine 'what meanings are reasonably possible.'" Id. (quoting Restatement (Second) of Contracts § 202 cmt. a, at 87 (1981)). The 2002 Agreement provides that CybrCollect will pay Stoberl "in accordance with Schedule C for each NSF fee collected by [CybrCollect] for all clients obtained by [Stoberl] for as long as client remains a customer of [CybrCollect], unless [Stoberl] violates Item #10 below." 2002 Agreement, Def.'s App. 1, ECF No. 33-4. Defendant reserves itself an exception to this absolute entitlement to fees. This exception, provided in Item #7, stipulates that "[Stoberl] will receive no payment for checks forwarded to outside agencies for collection." Id.

At the hearing, Defendant contended that the 2002 Agreement's meaning could easily be deduced by a facial evaluation of the document itself. "The meaning of an unambiguous contract

presents a legal question, which properly may be resolved by summary judgment." AGR-Keast, L.L.P. v. Steen, 798 N.W.2d 349, __, 2011 WL 649648, at *3 (Iowa Ct. App. Feb. 23, 2011) (citing Margeson v. Artis, 776 N.W.2d 652, 659 (Iowa 2009)) (concluding that "from the words of the purchase agreement and of the option agreement, as well as the surrounding circumstances, the agreements represent one transaction with consideration and summary judgment should not have been entered in favor of the [defendants]"); see also McCormack v. Citibank, N.A., 100 F.3d 532, 538 (8th Cir. 1996) ("We recognize that the meaning of an unambiguous contract presents a question of law appropriate for summary judgment. Conversely, the interpretation of an ambiguous contract presents a question of fact, thereby precluding summary judgment." (internal quotation marks and citations omitted)). "[W]here the intent of the parties is expressed in clear and unambiguous language, [courts] enforce the contract as written." Howard v. Schildberg, Constr. Co., Inc., 528 N.W.2d 550, 554 (Iowa 1995). While the parties disagree upon the interpretation of the 2002 Agreement, disagreement alone does not make a term ambiguous. See W. Liberty Tele. Co. v. CopperCom, Inc., __ F. Supp. 2d __, No. 3:08-cv-00105-JAJ-TJS, 2009 WL 8385888, at *10 (S.D. Iowa Sept. 8, 2009) (citing Rick v. Sprague, 706 N.W.2d 717, 723 (Iowa 2005)).

In the present case, the 2002 Agreement grants Stoberl fees for "each" fee collected. 2002 Agreement, Def.'s App. 1, ECF No. 33-4. It does not stipulate the method of collection that must be employed. Instead, the 2002 Agreement provides a limitation which precludes Stoberl from collecting fees when an outside agency is used for collection. Item #4 also enables CybrCollect to "refuse to accept orders that are deemed to be unprofitable to [CybrCollect]." Id. When, as here, the parties have carved out exceptions, the Court applies the rule "expressio unius est exclusio alterius – the expression of one thing of a class implies the exclusion of others not expressed." Maytag Co. v. Alward, 112 N.W.2d 654, 656 (Iowa 1962) (applying the rule to both contracts and statutes); see also Peak, 799 N.W.2d at 548 (holding that "the express mention of

[one defendant's] name, with [a second defendant's] omitted, raises an inference that the drafter did not intend to discharge [the second defendant's] liability"). Furthermore, doubts regarding the meaning of a contract are construed against the drafter. See Peak, 799 N.W.2d at 548. The 2002 Agreement makes no mention of electronic or non-electronic collections. Instead, the 2002 Agreement distinguishes only internally and externally collected NSF checks. The current record before the Court cannot support the interpretation proffered by Defendants. To the contrary, the 2002 Agreement, interpreted in the light of the writing as a whole, grants Stoberl fees for each NSF check collected by CybrCollect so long as an outside agency is not employed.

While Iowa law requires that the 2002 Agreement be interpreted in light of the relevant circumstances, the record is lacking in that regard. CybrCollect, through Monroe, has clearly established that it has never "inten[ded] to pay for any fee that was collected in any manner *other* than electronically," Def.'s App. 10, ECF No. 33-4; however, this later expressed intent is not clearly manifested in the 2002 Agreement itself. In fact, Stoberl counters that she "refused to sign any contracts that did not provide for paying commission on all collected NSF checks." Stoberl Aff. 2, Pl.'s App. 108, ECF No. 54-3. "In searching for [the parties'] intention, [the court] look[s] to what the parties did and said, rather than to some secret, undisclosed intention they may have had in mind, or which occurred to them later." Peak, 799 N.W.2d at 544 (quoting Waechter v. Aluminum Co. of Am., 454 N.W.2d 565, 568 (Iowa 1990)). The record before the Court demonstrates that CybrCollect historically paid non-electronically collected funds to Stoberl. See Tucker v. Leise, 206 N.W. 258, 260 (Iowa 1925) ("One of the matters that may be taken into consideration in determining the intent of the parties is their conduct and actions under the contract subsequent to its execution."); see also Edwards v. Wagner, 183 N.W. 450, 451 (Iowa 1921) (holding that the language of the lease, and the plaintiff's conduct subsequent to the lease's execution, clearly demonstrated that the plaintiff construed the lease as the defendant suggested); see also In re Talbott's Estate, 224 N.W. 550, 553 (Iowa 1929) (considering

subsequent conduct of the parties when interpreting the intent of the parties). In light of the parties' written agreement and conduct, this Court finds that the 2002 Agreement is subject to only one unambiguous interpretation – an interpretation contrary to that which is offered by CybrCollect. See Peak, 799 N.W.2d at 543 (holding that "within the four corners" of the contract "its terms [are] unambiguous[]"). Because the disputed language is subject to only one interpretation, the Court need not consider the second step in contract interpretation.[11]

In addition to past earned income, Stoberl alleges CybrCollect continues to withhold past residuals and refuses to pay present and future residuals on the accounts she acquired on behalf of CybrCollect. Stoberl asserts that under the terms of the 2002 Agreement, she or her beneficiaries would continue to receive commissions from the clients she had acquired for CybrCollect, even if her relationship with CybrCollect had been terminated. She points to the beneficiary forms that she completed to support this contention.[12] These forms provide that "[c]ommissions shall continue to be paid to the beneficiary as long as the merchant/store remains a customer of CybrCollect, Inc." Beneficiary Consent Forms, Pl.'s App. 18-19, ECF No. 54-3. The forms provide no limitations to this guarantee. Stoberl insists that, since she did not work for a competitor in the same line of business until after CybrCollect terminated their relationship, CybrCollect is in breach of the 2002 Agreement by withholding her residuals.

CybrCollect contends that Stoberl is not entitled to unending residuals even though CybrCollect continues to do business with customers she obtained. CybrCollect references the

---

[11] Iowa law provides that after the Court determines what meanings are reasonably possible, it "must then 'choos[e] among possible meanings.'" Walsh, 622 N.W.2d at 503 (quoting Restatement (Second) of Contracts § 202 cmt. a, at 87 (1981)). Since, the present language in dispute is subject to only one meaning, no further interpretation is required.

[12] The beneficiary forms provided to the Court are dated February 1, 2005, and March 8, 2007. No beneficiary form from 2002 was provided. However, CybrCollect agreed at the hearing that the beneficiary forms are part of the 2002 Agreement; therefore, the Court will consider them accordingly.

non-compete language provided in the 2002 Agreement, which specifies that compensation stops immediately if Stoberl works for a competitor within a year of her position with CybrCollect terminating. CybrCollect notes that the Addendum could be interpreted to remove the non-competition provision but asserts that, pursuant to Item #3 of the 2002 Agreement, the change still would not entitle Stoberl to compensation past the point that she competes. The provision provides that CybrCollect "will pay [Stoberl] in accordance with <u>Schedule C</u> for each NSF fee collected by [CybrCollect] for all clients obtained by [Stoberl] for as long as client remains a customer of [CybrCollect], unless [Stoberl] violates Item #10." 2002 Agreement, Def.'s App. 1, ECF No. 33-4. At the hearing, CybrCollect argued that Item #3 incorporates the non-compete language of Item #10 but that the termination exception to the non-compete added by the Addendum modifies only Item #10. CybrCollect concludes that since Stoberl has admitted to working for a competitor, CybrCollect is under no obligation to provide further payments to Stoberl.

Applying the contract interpretation rules previously discussed, the Court cannot adopt CybrCollect's selective inclusion of Item #10. By invoking Item #10 without limitation, Item #3 incorporated Item #10 in its entirety. As the drafter, CybrCollect could have included limiting language that it now argues applies; instead, CybrCollect chose, without qualification, to subject Item #3 to the terms of Item #10. Therefore, it is apparent from the language of the 2002 Agreement that Item #3 incorporates the non-compete restriction along with the termination exception provided in Item #10 and reiterated in the Addendum.

The issue remains unresolved as the parties dispute whether Stoberl was terminated by CybrCollect or left of her own accord. Stoberl insists that she did not compete against CybrCollect until after receiving the 2008 Agreement and its adjoining letter, which she contends resulted in her termination and released her from the non-compete clause. CybrCollect argues it did not terminate Stoberl, but rather that she elected to forego future relations with CybrCollect by

choosing not to enter into the 2008 Agreement. Since the present record is insufficient to enable the Court to resolve this dispute as a matter of law, the Court determines that a genuine issue of material fact remains regarding the conduct of the parties that precludes summary judgment.

As a third theory for her breach of contract claim, Stoberl alleges that CybrCollect's refusal to allow her to sell its product Transfusion constitutes a breach of their 2002 Agreement. Stoberl contends that since the 2002 Agreement granted her "non-exclusive territory as described in Schedule A" and she "agree[d] to solicit new clients for [CybrCollect's] products and services in this territory," she was entitled to solicit clients for *all* Defendant's products and services in those areas. Stoberl Dep. 72:13-73:25, Def.'s App. 26, ECF No. 33-4. Defendant argues that because the 2002 Agreement does not specifically grant Stoberl the ability to sell all of its products, CybrCollect implicitly reserves the right to limit Stoberl's access to its products. This Court finds the summary judgment record does not support CybrCollect's assertion.

Again, the Court is requested to interpret the 2002 Agreement, the meaning of which Defendant contends can be deduced solely from reviewing its text. The pertinent language provides that Stoberl "agrees to solicit new clients for Company's products and services." 2002 Agreement, Def.'s App. 1, ECF No. 33-4. The 2002 Agreement, drafted by Defendant, makes no mention of retaining discretionary power regarding what products Stoberl can use in soliciting clients. Instead, the 2002 Agreement limits her by territory, not by service or product. Following the principles laid out above, the Court finds that the 2002 Agreement did not by its own terms limit Stoberl's entitlement but, instead, granted her full authority to solicit clients for all of CybrCollect's products and services. Therefore, this Court cannot adopt Defendant's interpretation and thus denies summary judgment on this claim.

Stoberl's fourth breach of contract claim alleges that the termination of her employment was a violation of the 2002 Agreement. This claim raises two issues. First, it raises a legal question, as it requires the Court to read the 2002 Agreement as providing that Stoberl could be

terminated only for cause. CybrCollect disputes Stoberl's interpretation, arguing that their arrangement was terminable at-will or, at most, following reasonable notice. Secondly, it raises an issue of fact, as Stoberl's allegation presumes that she was terminated, an ultimate characterization, which the Defendant disputes.

Iowa courts have provided guidance in determining the duration of a contract when the parties have not stipulated to a set period. "When the duration of an employment contract is indefinite, the contract may be terminated at will by either party." Blackhawk Bldg. Sys., Ltd., v. Law Firm of Aspelmeier, Fisch, Power, Warner & Engberg, 428 N.W.2d 288, 290 (Iowa 1988). However,

> if a period of duration can be fairly implied from the nature of the contract, its subject matter and relationship of the parties, the contract is not terminable at the pleasure of either party and the court will give effect to the manifest intent of the parties. It also has been held that a contract will be held terminable within a reasonable time or revocable at will, depending on the circumstances, where no termination date was within the contemplation of the parties, or where their intention in regard thereto could not be ascertained.

W. Reserve Life Assurance Co. of Ohio v. Bratton, 464 F. Supp. 2d 814, 837-38 (N.D. Iowa 2006) (quoting Keppy v. Lilienthal, 524 N.W.2d 436, 439 (Iowa Ct. App. 1994)).

The only guidance the 2002 Agreement provides is that it "may be terminated by [CybrCollect] for [Stoberl's] failure to meet performance standards set forth in Schedule B. [CybrCollect] will provide [Stoberl] with written warning of possible termination and allow [Stoberl] the period set forth in Schedule B to correct performance deficiencies." 2002 Agreement, Def.'s App. 1, ECF No. 33-4. Defendant contends that, despite this provision, their arrangement is not limited to "for cause" termination. "Generally an employee under [a for cause termination] agreement may be terminated for reasons that relate to performance of his or her job and the impact of that performance on an employer's ability to attain its reasonable goals." Kern, 757 N.W.2d at 658 (internal quotation marks and citations omitted). The language of the 2002

Agreement signed by the parties appears to contemplate for cause termination, as it is premised upon Stoberl's potential failure in job performance and protects CybrCollect from any potential inability on Stoberl's part to obtain the goals set forth in Schedule B. However, the Court finds that the 2002 Agreement is subject to more than one interpretation, and the record before the Court is insufficient for the Court to determine the manifest intent of the parties precluding summary judgment on this claim.

### C. Iowa Wage Claim

Stoberl alleges that CybrCollect's withholding of her wages and residuals constitutes a violation of the Iowa Wage Payment Collection Law, Iowa Code § 91A (Iowa Wage Law). In support of her allegations, Stoberl states that the last paycheck she received compensated her for the services she provided from July 6 to July 12 in 2008. Stoberl reasserts that CybrCollect began withholding some of her commissions in 2004 and cites to the e-mail from Monroe for support. Specifically, Stoberl attests that in 2005 she saw a 20-25% dip in her commissions despite her accounts growing in number, a decrease that CybrCollect agreed at the hearing reflected the withholding of commissions from non-electronically collected fees. Stoberl concludes that CybrCollect's wrongful actions qualify her for liquidated damages and attorneys' fees. CybrCollect counters that all compensation that is owed to Stoberl has been paid. Again CybrCollect relies upon Keller's affidavit and commission payment spreadsheet documentation to support this contention.

While admitting that she considers herself to be an independent contractor, Stoberl simultaneously alleges that she qualifies as an employee, as is required to be covered by the Iowa Wage Law. Stoberl bases her quasi-employee status on the base pay that CybrCollect guarantees her, a practice she argues is uncharacteristic outside an employee-employer relationship. CybrCollect avoids this fundamental concern by asserting that whether Stoberl is an employee or

an independent contractor is irrelevant, since, either way, all commissions have been paid and residuals are not owed.

CybrCollect's proffered documentation fails to conclusively establish that Stoberl has received all money owed. As discussed above, Defendant is not entitled to the interpretation of the 2002 Agreement that it espouses nor the summary judgment that it requests. Furthermore, the parties have failed to address the central consideration at issue – whether Stoberl qualifies as an employee as that status is defined under the Iowa Wage Law.

The Iowa Wage Law serves "to facilitate the collection of wages owed to employees." Jeanes v. Allied Life Ins. Co., 300 F.3d 938, 943 (8th Cir. 2002) (quoting Phipps v. IASD Health Servs. Corp., 558 N.W.2d 198, 201 (Iowa 1997)). "If an employer fails to pay an employee wages, the employer is subject to liability for unpaid wages or expenses, court costs, and attorney fees." Phipps, 558 N.W.2d at 202. An "employee" includes "a commission salesperson who takes orders or performs services on behalf of a principal and who is paid on the basis of commissions but does not include persons who purchase for their own account for resale." Jeanes, 300 F.3d at 944 (quoting Iowa Code § 91A.2(3)) (finding that the plaintiffs, both independent contractors, were owed their withheld commissions because they qualified as "commission salespersons" and were, therefore, employees under the Iowa Wage Law). As the Eighth Circuit held in Jeanes v. Allied Life Ins. Co., 300 F.3d 938, 944 (8th Cir. 2002), "the Iowa Legislature could rationally conclude that commission salespersons have the same need for the protections of the statute as wage-earning employees, even if the commission salespersons are technically independent contractors." Because the parties have yet to fully address whether Stoberl qualifies as an employee under the Iowa statute, the record is incomplete on this issue and precludes summary judgment on Stoberl's Iowa Wage Law claim.

**D. Estoppel**

Based upon the alleged withheld wages, improper demand to sign a new agreement under threat of termination, and hostile work environment following her refusal to pose nude for Doherty, Stoberl contends that CybrCollect is estopped from denying it breached the 2002 Agreement. She further asserts that CyberCollect is estopped from withholding her past and future commissions and damages. Specifically, Stoberl claims that "Cybrcollect has unclean hands" and references an e-mail that she received in June 2007 from Diane Neumann,[13] a former co-worker who left her employment with CybrCollect, warning Stoberl that Monroe's plan was to terminate Stoberl as soon as CybrCollect sold out to Purepay.[14] Plaintiff also cites two e-mails from Monroe to support that she was denied the right to sell CybrCollect products and was not paid according to the 2002 Agreement. Stoberl then mentions, though does not provide the Court, an e-mail from Doherty, which she says granted her the right to sell products for other companies so long as her actions did not compete with CybrCollect's check recovery service. Finally, she claims that the proposed 2008 Agreement, along with the letter threatening termination for failure to sign, support her claim for estoppel.

In response to Stoberl's claim, CybrCollect addresses three types of estoppel recognized under Iowa law: estoppel by acquiescence, promissory estoppel, and equitable estoppel. "Estoppel by acquiescence occurs when a person knows or ought to know of an entitlement to enforce a right and neglects to do so for such time as would imply an intention to waive or

---

[13] The record also provides the spelling "Newman" and "Nueman."

[14] CybrCollect also argues in its reply brief that "the Court must disregard Bell App. 111-112" based upon Federal Rule of Civil Procedure 56(c)(2), which requires that the evidence used in resistance to summary judgment must be admissible evidence. Def.'s Reply 4, ECF No. 56. Defendant contends that the statements in the e-mail from Diane Neumann to Stoberl were "out of court statement[s] offered for the truth of the matter asserted" and, therefore, impermissible hearsay. Id. Given the Court's determination on the estoppel claim, the Court does not address this issue.

abandon the right." In re Thompson Trust, 801 N.W.2d 23, 26-27 (Iowa Ct. App. 2011) (quoting In re Marriage of Fields, 508 N.W.2d 730, 731 (Iowa 1993)); see also Moore v. Davenport Civil Serv. Comm'n, 790 N.W.2d 809, 815 n.7 (Iowa Ct. App. 2010) (quoting Markey v. Carney, 705 N.W.2d 13, 21 (Iowa 2005)) (same). From even a cursory review of the record, it is evident that Stoberl was not intending to invoke, nor does the record support the application of, this doctrine. Accordingly, the Court need only give consideration to equitable and promissory estoppel. See Duder v. Shanks, 689 N.W.2d 214, 221 n.2 (Iowa 2004) (noting that a vaguely stated "just estoppel," when no cases were cited and no elements were listed, could have been intended to invoke either promissory estoppel or equitable estoppel).

"The doctrine of promissory estoppel is invoked to 'imply a contract in law where none exists in fact.'" PFS Distrib. Co. v. Raduechel, 387 F. Supp. 2d 1020, 1026 (S.D. Iowa 2005) (citing DeJong v. City of Sioux Ctr., 980 F. Supp. 1010, 1014 (N.D. Iowa 1997)). Therefore, where a contract exists, "promissory estoppel may not be used to enforce a right which has been confirmed in writing." Id. Promissory estoppel is demonstrated by showing:

> (1) a clear and definite promise; (2) the promise was made with the promissor's clear understanding that the promise was seeking assurance upon which the promisee could rely and without which [s]he would not act; (3) the promisee acted to his or her substantial detriment in reasonable reliance on the promise; and (4) injustice could be avoided only by enforcement of the promise.

Kolkman v. Roth, 656 N.W.2d 148, 156 (Iowa 2003).

Stoberl has failed to adequately allege facts to survive summary judgment on a promissory estoppel claim. There can be no genuine issue of material fact when the non-moving party fails to offer proof concerning an essential element of her claim. Celotex, 477 U.S. at 323. Stoberl omits any reference to a promise apart from the 2002 Agreement itself. Her sexual harassment and hostile work environment allegations cannot form the basis of a promissory estoppel claim, as neither constitutes a promise nor resulted in reasonable reliance on Stoberl's part. See Roth,

656 N.W.2d at 156.  Similarly, Stoberl's allegations that CybrCollect failed to pay fees and with-held residuals are insufficient, by themselves, to support a promissory estoppel claim, as they would be dependent upon the written document.  The e-mails referenced by Stoberl suggest only that a former co-worker believed CybrCollect intended to terminate Stoberl's employment and that CybrCollect was not going to pay Stoberl for fees not collected electronically.  This fails to show the requisite promise or reliance.  Furthermore, the threat of termination and the imposition of a new agreement do not constitute a promise, and did not result in detrimental reliance.  At the hearing, Stoberl pointed only to the Addendum and beneficiary forms to demonstrate promises apart from the 2002 Agreement.  Stoberl points to no record evidence to support a promissory estoppel claim, and it is not the burden of the Court to "scour the record looking for factual disputes."  Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1033 (8th Cir. 2007).  Accordingly, a claim for promissory estoppel cannot survive summary judgment.

"Equitable estoppel is based on the concept that one who has made certain representations should not thereafter be permitted to change his or her position to the prejudice of one who has relied thereon."  Fernandez v. Iowa Dep't of Human Servs., 375 N.W.2d 701, 708 (Iowa 1985).  Equitable estoppel requires a claimant to show by clear and convincing evidence that: "(1) [t]he defendant has made a false representation or has concealed material facts; (2) the plaintiff lacks knowledge of the true facts; (3) the defendant intended the plaintiff to act upon such representa-tions; and (4) the plaintiff did in fact rely upon such representations to h[er] prejudice."  Hook v. Lippolt, 755 N.W.2d 514, 524-25 (Iowa 2008) (citation omitted).  Equitable estoppel may be employed when injustice would otherwise occur, but it "may not be established if any one of these elements is lacking."  Hendricks v. Great Plains Supply Co., 609 N.W.2d 486, 493 (Iowa 2000) (quoting Fernandez, 375 N.W.2d at 708).

Though Stoberl does not directly invoke the doctrine of equitable estoppel, "it is not necessary that an estoppel be directly alleged when the operative facts from which the estoppel

arises are embraced within the petition." In re Marriage of Winegard, 278 N.W.2d 505, 510 (Iowa 1979). However, as discussed above, Stoberl has failed to allege that CybrCollect made any specific false representation. While Stoberl proffers a different interpretation of the 2002 Agreement, she points to no statements by CybrCollect which demonstrate that she was guaranteed non-electronic funds, residuals, or job security absent for cause termination. Nor does she allege that the parties made false representations at the time that she entered into the 2002 Agreement. Again, the presentation of a new agreement and a hostile work environment do not constitute false representations upon which Stoberl relied. Since Stoberl has failed to set out the necessary elements of her estoppel claim, CybrCollect is entitled to summary judgment.[15]

### E. Breach of Fiduciary Duty/Confidential Relationship

In her complaint, Stoberl asserts that "[a] confidential relationship existed" between CybrCollect and herself. Am. Compl. 12, ECF No. 18. She further contends that CybrCollect "occupied a fiduciary relationship with respect to [her]." Id. Stoberl characterizes CybrCollect as holding a "dominant and controlling position with respect to [her]." Answer to Interrog. 13, Def.'s App. 10, ECF No. 33-4. She bases this contention on the fact that CybrCollect writes her paychecks, which forces her to comply with CybrCollect's requests or risk losing her livelihood. Stoberl also alleges that she invested years helping to build a clientele for CybrCollect and relied

---

[15] Defendant also raises the Iowa Civil Rights Act (ICRA) and Title VII, arguing that they preempt Stoberl's third, fourth, fifth, and sixth claims insofar as they invoke any alleged hostile work environment and inappropriate actions on the part of Doherty. These statutes, however, will have no bearing on the present case if Stoberl is found to hold a position as an independent contractor. "The law is well established that Title VII protects employees, not independent contractors, from discriminatory employment practices." Hunt v. Mo., Dep't of Corr., 297 F.3d 735, 741 (8th Cir. 2002). Likewise the ICRA "protect[s] employees but not independent contractors." Ernster v. Luxco, Inc., 596 F.3d 1000, 1003 (8th Cir. 2010). As the Court discusses below, the present record is insufficient for the Court to classify her employment status under the 2002 Agreement. Furthermore, the Court has not relied upon the claim of hostile work environment nor consider Doherty's alleged improper actions in ruling on the present motion.

upon Doherty and CybrCollect to provide commissions and residuals in compensation for that investment.[16]  Plaintiff claims CybrCollect intentionally acted to deprive her, a top performing salesperson, of her accrued residuals.  CybrCollect counters that it does not owe Stoberl a fiduciary duty.  After enumerating the factors considered by courts in determining if a fiduciary relationship exists, CybrCollect asserts that Stoberl was an independent contractor, and no facts have been presented to support a finding that CybrCollect owed any type of fiduciary duty.[17]

Whether a fiduciary duty exists is a question of law to be resolved by the Court.  Garofalo v. Lambda Chi Alpha Fraternity, 616 N.W.2d 647, 650 (Iowa 2000).  "[A] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  Weltzin v. Cobank, ACB, 633 N.W.2d 290, 294 (Iowa 2001) (quoting Kurth v. Van Horn, 380 N.W.2d 693, 695 (Iowa 1986)).  The Iowa Supreme Court has also adopted the following definition of fiduciary relationship:

> A very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one man trusts in or relies upon another.  One founded on trust or confidence reposed by one person in the integrity and fidelity of another.  A "fiduciary relation" arises whenever confidence is reposed on one side, and domination and influence result on the other; the relation can be legal, social, domestic, or merely personal.  Such relationship exists when there is a reposing of faith, confidence and trust, and the placing of reliance by one upon the judgment and advice of another [sic].

Id. (quoting Kurth, 380 N.W.2d at 695).

To determine whether a fiduciary relationship exists, the Court must evaluate "the particular facts and circumstances involved in each case."  Id. at 293.  Factors to be considered "include the acting of one person for another; the having and the exercising of influence over one

---

[16] Stoberl also contends that she brought seventy to one hundred accounts with her when she began working for CybrCollect.

[17] Again, CybrCollect challenges the admissibility of Diane Neumann's e-mail.  For the same reason discussed above, see supra note 14, this objection necessitates no consideration by this Court.

person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another." Id. at 294.

CybrCollect cites to Condon Auto Sales & Serv., Inc., v. Crick, 604 N.W.2d 587 (Iowa 1999), to support its contention that, contrary to Stoberl's desired application, Iowa courts have imposed fiduciary relationships against employees in favor of employers. The court in Condon, however, was considering a cause of action for breach of loyalty under a contract *separate* from any claim of a fiduciary relationship or fiduciary duty. Condon, 604 N.W. 2d at 599-601. Iowa courts recognize "the existence of a common law duty of loyalty which is implied in employment relationships." Id. at 598. "This duty exists in at-will employment relationships, as well as contracts for a specific term." Id. at 599. However, Stoberl has not raised a claim based on the common law duty of loyalty. Instead, Stoberl has alleged that "a confidential relationship existed," and CybrCollect "occupied a fiduciary relationship with respect to [her]." Am. Compl. 12, ECF No. 18. In her response to CybrCollect's statement of undisputed facts, Stoberl affirms that her basis for this claim is that "CybrCollect was in a dominant and controlling position," and she "relied on Mr. [Doherty] and other control persons." She adds that "the facts are broader. She essentially had no power to protect herself." Pl.'s Resp. to Statement of Undisputed Facts ¶ 13, ECF No. 54-1.

In view of the record before the Court, Stoberl's claim amounts to little more than a conclusory characterization of her relationship with CybrCollect. See Cagin v. McFarland Clinic, P.C., 317 F. Supp. 2d 964, 969-70 (S.D. Iowa 2004) (applying Iowa law and granting a motion to dismiss for defendant, holding plaintiff's "conclusory characterization of the relationship between himself and [d]efendant" was inadequate as the plaintiff had "not alleged sufficient facts about [the] relationship . . . to support his claim that a fiduciary duty existed"). Plaintiff provides no evidence upon which this Court could construe the relation between the parties to constitute

one akin to a fiduciary relationship. Because Stoberl has failed to point to evidence to support her case, summary judgment is warranted. See St. Jude Med., Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 596 (8th Cir. 2001).

### F. Breach of Implied Covenant of Good Faith and Fair Dealing

After restating the previously alleged acts on the part of CybrCollect, Stoberl asserts that these circumstances constitute a breach of the implied covenant of good faith and fair dealing. In support of her contention, Stoberl cites the e-mail sent by Monroe on June 17, 2005. In this e-mail, pursuant to requests made by Stoberl, Monroe claims that while a "generous plan" was pro-vided "during [Stoberl's] start up with CybrCollect," it "does not come into play as [Stoberl's] commissions diminish."[18]  Answer to Interrog. 14, Def.'s App. 10, ECF No. 33-4.  Monroe states further that CybrCollect never intended to provide compensation for any fee except those received electronically and does not guarantee payment if a change in ownership occurs. Monroe also asserts that the agreements used by CybrCollect intentionally allow for termination by either party as soon as the arrangement is no longer desirable. This e-mail, Stoberl contends, estab-lishes that CybrCollect refused to honor the terms of the 2002 Agreement. She claims that

---

[18] The e-mail provides

> Your base pay guarantee was your initial draw that was used to give you the time to develop your income stream to a level of $3000 per month. At that time you were deemed on your own and the need for the draw would be eliminated. I quote from a communication dated 11/13/2001 where Gary [Doherty] agrees to this, "when the actual commissions (start to) go above $750, we will add $1000 until they get to $2500, at which time we would add $500 until the actual commission got to $3000, at which time she would be on her own." Clearly this is not, nor has it ever been the practice of this company to commit to a minimum income level beyond the point where an agent is able to achieve this on their [sic] own. Gary's generous plan to you during your start up with CybrCollect does not come into play as your commissions diminish.

Answer to Interrog. 14, Def.'s App. 10, ECF No. 33-4.

CybrCollect's actions amount to a reckless disregard for her rights and concludes that this entitles her to punitive damages.

CybrCollect counters by noting that Iowa applies the implied covenant of good faith and fair dealing narrowly. CybrCollect again asserts that Stoberl has been paid all monies owed and concludes that Stoberl has failed to provide sufficient facts to support her allegation.

"[T]he implied duty of good faith and fair dealing [is] recognized in all contracts." Fogel v. Trs. of Iowa Coll., 446 N.W.2d 451, 456 (Iowa 1989). Good faith, in the contract context, "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." Kooyman v. Farm Bureau Mut. Ins. Co., 315 N.W.2d 30, 34 (Iowa 1982) (quoting Restatement (Second) of Contracts § 205 cmt. a (1981)). It imposes good faith "in the performance and enforcement of a contract." Engstrom v. State, 461 N.W.2d 309, 314 (Iowa 1990). "In order for an action for breach of implied covenant of good faith and fair dealing to lie, there must be, virtually by definition, an act of bad faith. Mere breach of contract, by itself, is not enough." Grahek v. Voluntary Hosp. Coop. Ass'n of Iowa, Inc., 473 N.W.2d 31, 34 (Iowa 1991).

On the record before the Court, CybrCollect has failed to prove that no genuine issue of material fact exists. CybrCollect supports its motion by arguing that Iowa narrowly applies this contract remedy. That contention does not preclude Stoberl's claim. Stoberl alleges that CybrCollect's actions constitute bad faith and raises sufficient facts to support this claim. Plaintiff references an e-mail from Monroe to demonstrate that, three years into their relationship and outside of her expectations, CybrCollect refused to continue to guarantee her base pay, refused to pay her all commissions owed and changed the basis for termination of the 2002 Agreement. She alleges that, post wrongful termination, the withholding of her earned wages and residuals exceeds breach of contract to constitute bad faith.

However, one caveat in this claim remains.  In Stoberl's deposition she admits that she considers herself to be an independent contractor and then qualifies her admission to declare that she considers herself "almost mixed," or part independent contractor and part employee.  Stoberl Dep. 56:13-57:7, Def.'s App. 22-23, ECF No. 333-4.  As previously addressed, she bases this assertion upon her guaranteed base pay, which she contends is uncharacteristic of an independent contractor.

The general duty of good faith and fair dealing has been limited by the Iowa Supreme Court, which has "consistently rejected th[e] theory in employment contract cases."  Porter v. Pioneer Hi-Bred Int'l, Inc., 497 N.W.2d 870, 871 (Iowa 1993) (citing French v. Foods, Inc., 495 N.W.2d 768, 771 (Iowa 1993); Fogel, 446 N.W.2d at 456-57).  The resolution of this claim, therefore, becomes dependent upon whether Stoberl qualifies as an independent contractor.  "[E]xisting principles of contract law provide independent contractors with remedies not available to employees."  Harvey v. Care Initiatives, Inc., 634 N.W.2d 681, 684 (Iowa 2001).  In Harvey, the court noted that the plaintiff, an independent contractor, may have had a claim under the implied covenant of good faith and fair dealing, but the court refrained from considering the cause of action since the plaintiff failed to raise it.  Id. at 684 n.4.

In their discussion of the present claim, neither party considers whether Stoberl is an employee or an independent contractor.  Instead, Stoberl omits any characterization of her employment for the purposes of this claim while CybrCollect appears to consider her an employee for the purpose of its invocation of Title VII and the ICRA and an independent contractor for the purposes of the fiduciary duty claim.  This flexibility in argument is antagonistic to summary judgment.  The designation of an individual as "an independent contractor or an employee is a 'factual determination based on the nature of the working relationship and many other circumstances, not necessarily on any label used to identify the parties in the contract.'"  Pa. Life Ins. Co. v. Simoni, 641 N.W.2d 807, 813 (Iowa 2002) (quoting Harvey, 634 N.W.2d at

684 n.2). "In cases presenting a choice between categorizing a person as an employee or an independent contractor, the primary focus is on the extent of control by the employer over the details of the alleged employee's work." Iowa Mut. Ins. Co. v. McCarthy, 572 N.W.2d 537, 542 (Iowa 1997). Other relevant factors include whether the agent was on the employer's payroll, the nature of the business, whether assistants were employed, the right of the employer to supervise activities, whether the employer furnished any necessary materials, and the length of employment. Id. at 542-43. When the legal effect of facts, not the facts themselves, are in dispute, summary judgment is an appropriate means of resolving whether a person qualifies as an employee or an independent contractor. LaFleur v. LaFleur, 452 N.W.2d 406, 407 (Iowa 1990); cf. Iowa Mut. Ins. Co., 572 N.W.2d at 541 (holding that "substantial evidence existed to support submission of the question of [agent's] employment status to the jury").

The record before the Court is not sufficiently developed factually, and the parties failed to brief the issue; therefore, the Court finds that it would be premature to rule on Stoberl's working classification as a matter of law. Notably, Stoberl admits that she considered herself to be an independent contractor, and CybrCollect affirms this assertion. See Iowa Mut. Ins. Co., 572 N.W.2d at 542 ("It is important to note that even in those cases where the parties' intent is not the overriding or controlling consideration, it is still a factor to be considered."). Furthermore, CybrCollect issued Stoberl an Internal Revenue Service 1099 form and not a W-2 form; therefore, for income reporting purposes, CybrCollect treated Stoberl as an independent contractor. See McGowan v. Brandt Constr. Co., 786 N.W.2d 519, __, 2010 WL 2079704, at *10 (Iowa Ct. App. May 26, 2010) (table decision) (considering plaintiff's compensation structure and receipt of Internal Revenue Service 1099 form for reporting his income in finding that plaintiff was an independent contractor). Additionally, the 2001 Agreement has a header that reads "Independent Agency Agreement." 2001 Agreement, Pl.'s App. 12, ECF No. 54-3. The 2002 Agreement, with the exception of the omitted header, is nearly identical to its predecessor.

However, the record reflects that CybrCollect provided "all necessary materials" that were "not to be considered materials supplied to [Stoberl] for [Stoberl's] benefit or use." 2002 Agreement, Def.'s App. 1, ECF No. 33-4. Furthermore, the record is silent regarding the extent of CybrCollect's control over Stoberl, whether Stoberl worked with or employed any assistants, the effect of the length of the employment, the intent of the parties when they entered into the 2002 Agreement, or the general practice of the industry. On this record, the Court is not equipped with the requisite facts to characterize the nature of Stoberl's employment as a matter of law. Therefore, a genuine issue of material fact remains regarding Defendant's breach of the implied covenant of good faith and fair dealing, which precludes summary judgment.

### G. Fraud

In her complaint, Stoberl alleges that CybrCollect's "actions constitute fraud [by], among other things, attempting to improperly take rights, income, [and] assets belonging to Plaintiff Mary 'Belle' Stoberl." Am. Comp. 18, ECF No. 18. Plaintiff's basis for this claim is that "[t]he facts and circumstances of my termination and forcing out done by CybrCollect appear suspicious" and references her complaint for "a general outline of several of the pertinent facts." Pl.'s Resp. to Statement of Undisputed Facts ¶ 15, ECF No. 54-1; Def.'s Statement of Undisputed Facts ¶ 15, ECF No. 33-3. In her fraud claim, Stoberl reasserts the previously discussed violations, specifically alleging that CybrCollect attempted to use the threat of termination to coerce the signing of the 2008 Agreement, which constituted a "knowing and deliberate attempt to force [the] sacrifice of property that [Stoberl] had earned." Am. Compl. 18, ECF No. 18. At the hearing, Stoberl added only that the Addendum and beneficiary forms further support her claim of fraud.

The claimant bears the burden of establishing fraudulent misrepresentation by showing "(1) representation, (2) falsity, (3) materiality, (4) scienter, (5) intent to deceive (6) reliance, (7) resulting injury and damage." Lloyd v. Drake Univ., 686 N.W.2d 225, 233 (Iowa 2004)

(quotation and citations omitted). From the facts alleged, it is clear that Stoberl has not met this burden. While the Court must "view the facts in a light most favorable to the non-moving party, mere allegations which are not supported with specific facts are not enough to withstand [a] motion [for summary judgment]." Klein v. McGowan, 198 F.3d 705, 709 (8th Cir. 1999).

Stoberl has failed to point to a false representation made by CybrCollect upon which she has relied. While Stoberl alleges various bad acts, they do not constitute material and false representations, nor do they demonstrate reliance on her part that resulted in injury. Even if the presentation of the 2008 Agreement were coercive, it does not constitute a false representation. Any alleged bad acts on the part of Doherty similarly fail to support a claim of fraud, as Stoberl did not rely upon them to her detriment. Stoberl points to the withholding of wages and residuals as support for her claim of fraud. Any wrongfulness of these acts, however, arises as a failure to perform under the 2002 Agreement. "Mere failure of future performance cannot alone prove deceit; otherwise every breach of contract would give rise to an action for fraud." City of McGregor v. Janett, 546 N.W.2d 616, 619 (Iowa 1996). For the same reason, Stoberl's reliance on the Addendum and beneficiary forms, which the parties agreed constitute part of the 2002 Agreement, will not suffice. Furthermore, Stoberl has failed to show that CybrCollect had the present intent to commit fraud at the time the parties entered into their 2002 Agreement. See Grahek, 473 N.W.2d at 35 ("A statement of an intent to perform a future act is actionable in fraud if the statement is made with existing real intention not to perform."); see also Robinson v. Perpetual Servs. Corp., 412 N.W.2d 562, 565-66 (Iowa 1987) ("Unless the present state of mind is misstated, there is of course no misrepresentation. When a promise is made in good faith, with the expectation of carrying it out, the fact that it subsequently is broken gives rise to no cause of action, either for deceit or equitable relief. Otherwise any breach of contract would call for such a remedy. The mere breach of a promise is never enough in itself to establish fraudulent intent." (quoting W. Prosser, The Law of Torts § 109, at 730-31 (4th ed. 1971))). Finally, Stoberl's

claims that Defendant improperly took her rights, income, and assets, do not constitute fraud. Stoberl has failed to point to clear, satisfactory, and convincing evidence of an intent to deceive on the part of CybrCollect and, therefore, cannot defeat summary judgment on her fraud claim.

### H. Unjust Enrichment/Quantum Meruit

Stoberl contends that, through the previously alleged bad acts, CybrCollect has been unjustly enriched, and, therefore, "[u]njust enrichment and/or quantum meruit" entitle her to compensation. Am. Compl. 21, ECF No. 18. Specifically, Stoberl alleges that the retention of her residuals and earned commissions constitute unjust enrichment for CybrCollect.

CybrCollect counters that unjust enrichment and quantum meruit are remedies available only when an implied contract is at issue. CybrCollect cites to Iowa case law to support its view that it is improper to imply a contract when an express contract exists to govern the disputed subject. CybrCollect concludes that since Stoberl's claim is based on unpaid wages and residuals, Stoberl's remedy is limited by the express contract.

Neither party addresses the differences between recovery based on unjust enrichment and quantum meruit. Instead, Defendant relies entirely on a 1985 Iowa Supreme Court case that considers both unjust enrichment and quantum meruit to be implied contract claims. Chariton Feed and Grain, Inc. v. Harder, 369 N.W.2d 777, 791 (Iowa 1985) (holding that the trial court erred in finding defendant liable to plaintiff on an implied contract theory when the express contract covered the dispute between the parties). The court in Chariton held that "[a]n express contract and an implied contract cannot coexist with respect to the same subject matter, and the former supersedes the latter." Id. Having found that an express contract existed to cover the subject matter at issue, the court held "no claim based on [an] implied contract will lie." Id. As illustrated in Chariton, Iowa case law has historically treated quantum meruit and unjust enrichment interchangeably. In more recent cases, however, Iowa courts have distinguished between

the two remedies.  See, e.g., Simon v. Avenarius, 773 N.W.2d 562, __, 2009 WL 2525485, at *5-6 (Iowa Ct. App. Aug. 19, 2009) (unpublished table decision).

Quantum meruit is a claim for recovery based on "a breach of an implied-in-fact contract, for the reasonable value of the services provided."  Scott v. Grinnell Mut. Reinsurance Co., 653 N.W.2d 556, 561 n.2 (Iowa 2002) (quoting Iowa Waste Sys., Inc., v. Buchanan Cnty., 617 N.W.2d 23, 29 (Iowa Ct. App. 2000)).  To recover under a claim of implied contract, Stoberl must demonstrate

> (1) the services were carried out under such circumstances as to give the recipient reason to understand: (a) they were performed for him and not some other person, and (b) they were not rendered gratuitously, but with the expectation of compensation from the recipient; and (2) the services were beneficial to the recipient.

Roger's Backhoe Serv., Inc., v. Nichols, 681 N.W.2d 647, 652 (Iowa 2004) (emphasis omitted).

Under the circumstances of this case, summary judgment must be granted in CybrCollect's favor on Stoberl's claim of quantum meruit.  Iowa courts "will not imply a contract where there is an express contract."  Scott, 653 N.W.2d at 562 (internal quotation marks and citation omitted).  In the present case, Stoberl points to and alleges no facts independent of the 2002 Agreement itself.  Instead, her entire claim arises from the withholding of her wages and residuals, a dispute that is subject to the interpretation and enforcement of the 2002 Agreement. Since no one challenges the legitimacy of the 2002 Agreement, it supersedes any implied contract claim.

Unjust enrichment is an equitable remedy that "mandat[es] that one shall not be permitted to unjustly enrich oneself at the expense of another or to receive property or benefits without making compensation for them."  W. Branch State Bank v. Gates, 477 N.W.2d 848, 851-52 (Iowa 1991).  Rather than being contractually based, unjust enrichment is "equitable in nature" and "serves as a basis for restitution."  State Dep't of Human Servs. ex. rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 154 (Iowa 2001); see also Union Pac. R.R. Co. v. Cedar Rapids & Iowa

City Ry. Co., 477 F. Supp. 2d 980, 1000 (N.D. Iowa 2007). It can "serve as independent grounds for restitution in the absence of mistake, wrongdoing, or breach of contract." Unisys Corp, 637 N.W.2d at 154. To succeed on a claim based on unjust enrichment, Stoberl must prove that "(1) [CybrCollect] was enriched by the receipt of a benefit; (2) the enrichment was at the expense of [Stoberl]; and (3) it is unjust to allow [CybrCollect] to retain the benefit under the circumstances." Id. at 154-55.

The Iowa Supreme Court has held that "[g]enerally the existence of a contract precludes the application of the doctrine of unjust enrichment." Johnson v. Dodgen, 451 N.W.2d 168, 175 (Iowa 1990); see also Stonewall v. Stonewall, No. 98-728, 1999 WL 668741, at *5 (Iowa Ct. App. Aug. 27, 1999). In Brinkmann v. St. Paul Fire & Marine Ins. Co., No. 05-0744, 2006 WL 1750491, at *3 (Iowa Ct. App. June 28, 2006) (unpublished table decision), the court affirmed summary judgment, finding an action for unjust enrichment impermissible when the express contract covered the claims at issue. The court reasoned that despite unjust enrichment being equitable and not contractual in nature, "a plaintiff cannot recover on [either] an implied contract or unjust enrichment [claim] when the alleged damages arise from a matter covered by an express written contract." Id. The court went on to conclude that "generally the existence of a contract precludes the application of the doctrine of unjust enrichment, but there may be an implied contract on a point not covered by an express one." Id. (internal citations omitted); see also Lee Cnty. v. IASD Health Serv. Corp., No. LAL001334, 2000 WL 290367, at *14 (Iowa Dist. Ct. Feb. 9, 2000) (denying defendant's motion for summary judgment on plaintiff's breach of contract claim while granting defendant's motion for summary judgment on plaintiff's unjust enrichment claim, holding that "[r]ecovery may not be had on the basis of unjust enrichment when the claimed damages arise from the subject matter covered by an express contract and generally the existence of an express contract precludes the application of the doctrine of unjust enrichment"). As neither party has challenged the legitimacy of the 2002 Agreement, and both

parties have conceded that it covers the issue in dispute, Plaintiff has failed to present facts to adequately allege that anything beyond the written 2002 Agreement is at issue. Thus, in conformity with the considerations enumerated above, CybrCollect is entitled to summary judgment on Stoberl's unjust enrichment claim.

## I. Declaratory Judgment

In her eighth claim, Stoberl requests that the Court determine "the duties, responsibilities and rights of [the parties]." Am. Compl. 24, ECF No. 18. Stoberl characterizes her claim as a request for declaratory judgment in her answer to CybrCollect's interrogatory. However, in resistance to Defendant's motion for summary judgment, Plaintiff fails to defend her declaratory judgment claim.

A declaratory judgment is a form of equitable relief. See Pub. Affairs Assocs., Inc. v. Rickover, 369 U.S. 111, 112 (1962). While declaratory judgment should not be capriciously withheld, federal courts have been equipped with competence and authority, not imposed a duty, under the Declaratory Judgment Act. Id. Therefore, declaratory judgments "should be granted only as a matter of judicial discretion, exercised in the public interest." Id. (internal quotation marks and citation omitted). "When declaratory relief will not be effective in settling the controversy, the court may decline to grant it." Fed. R. Civ. P. 57 advisory committee's notes. This discretionary circumstance can arise, as here, when declaratory relief and another adequate remedy is available. See Fed. R. Civ. P. 57. There are two principal situations where the granting of declaratory relief is favored:

> (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

<u>Alsager v. Dist. Court of Polk Cnty., Iowa (Juvenile Div.)</u>, 518 F.2d 1160, 1163-64 (8th Cir. 1975) (quotation and citation omitted). When a case is not uniquely benefitted by declaratory judgment, courts have refused to grant it. <u>See</u> <u>Newton v. State Farm Fire & Cas. Co.</u>, 138 F.R.D. 76, 79 (E.D. Va. 1991) (denying declaratory judgment in a breach of contract case because the equitable remedy "serve[d] no useful purpose and w[ould] not clarify the legal rights or obligations in question"); <u>see also</u> <u>Pantry, Inc. v. Stop-N-Go Foods, Inc.</u>, 777 F. Supp. 713, 718 (S.D. Ind. 1991) ("In this case, the declaratory judgment claim is inappropriately raised because the plaintiff may be fully compensated if it prevails on the breach of contract claim. . . . Plaintiff may prove its damages as in any other breach of contract action requiring estimation of future losses.").

At the hearing, Stoberl stated that her request for declaratory relief was entirely encompassed by her other seven claims. Accordingly, the Court finds declaratory judgment is inappropriately raised, and CybrCollect is entitled to summary judgment on this claim.

## III.   CONCLUSION

For the reasons stated above, Defendants Motion for Summary Judgment (ECF No. 33) must be **granted** in part and **denied** in part. The motion is granted as to Stoberl's claims for estoppel, breach of fiduciary duty/confidential relationship, fraud, unjust enrichment/quantum meruit, and declaratory judgment. The motion is denied as to Stoberl's claims for breach of contract, violation of Iowa Wage Payment Collection Law, and breach of implied covenant of good faith and fair dealing.

**IT IS SO ORDERED**.

Dated this 28th day of November, 2011.

JAMES E. GRITZNER, Chief Judge
U.S. DISTRICT COURT